JPM:LRO
F. #2022R00580

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHLOMO PATCHIAV,
    also known as "Slava Fatkhiev,"

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. § 1951(a))

23-MJ-165

EASTERN DISTRICT OF NEW YORK, SS:

        JARRETT CONCANNON, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        Upon information and belief, in or about June 2022, within the Eastern District of New York and elsewhere, the defendant SHLOMO PATCHIAV, also known as "Slava Fathkiev," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: United States currency and a vehicle belonging to an individual ("Victim-1"), whose identity is known to the affiant, with the consent of Victim-1, which consent was to be induced by wrongful use of actual and threatened force, violence and fear.

        (Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.       I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2020. I am currently assigned to the Eurasian Organized Crime Task Force, where I participate in investigations involving organized crime, fraud, extortion and violent crime, among other matters. In connection with these investigations, I conduct and participate in surveillance, execute search warrants, debrief informants, review recorded conversations and other evidence, and execute arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.       I am familiar with the facts and circumstances set forth below from my training and experience; my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

3.       As set forth below, the FBI is investigating defendant SHLOMO PATCHIAV and others (including "CC-1") in connection with the extortion and apparent murder of Victim-1, who went missing from Brooklyn, New York, on or about June 25, 2022.

4.       Based on my participation in the investigation, including debriefing of witnesses, cell site data and my review of surveillance footage and other records, I have learned the following concerning CC-1 and PATCHIAV's extortion of Victim-1 and Victim-1's subsequent disappearance.

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

5. On or about June 17, 2022, Victim-1 and his son met with CC-1 and PATCHIAV to discuss a possible sale of high-end watches. Shortly after that meeting, CC-1 and PATCHIAV began demanding payment of approximately $500,000 from Victim-1, purportedly for watches that Victim-1 had received from CC-1 and PATCHIAV, and CC-1 made threatening statements about repercussions Victim-1 would face if he did not pay. Victim-1 subsequently spoke to PATCHIAV by telephone. During that call, PATCHIAV angrily demanded money from Victim-1.

6. Thereafter, on or about June 25, 2022, Victim-1 left his apartment in Brooklyn, New York at approximately 9:45 a.m. to meet CC-1, holding a black shopping bag. On that date, Victim-1 planned to provide payment to CC-1, to include (i) approximately $100,000 in cash, (ii) approximately $30,000 from Victim-1's bank account, and (iii) transferred ownership of Victim-1's Mercedes GLS 550 (the "Mercedes"). After June 25, 2022, Victim-1's family members did not see or speak to Victim-1 again.

7. Based on my participation in the investigation, including eyewitness interviews and my review of surveillance footage, I am aware that on June 25, 2022, CC-1 and Victim-1 visited a notary in Brooklyn, New York. There, before the notary, CC-1 and Victim-1 signed a statement indicating, in sum and substance, that if CC-1 did not receive payment of the debt by 11:59 p.m. on June 25, 2022, the Mercedes would belong to CC-1.

8. Also on June 25, 2022, Victim-1 issued a bank check to CC-1 for approximately $20,000 from Victim-1's TD Bank account and also withdrew approximately $10,000 in U.S. currency.

9. Later that day, at approximately 5:40 p.m., CC-1 visited a car dealership in Huntington, Pennsylvania. Based on my participation in the investigation, including interviews

of witnesses and my review of surveillance footage, I am aware that, while at the dealership, CC-1 purchased a silver Chevrolet Malibu (the "Malibu") for $2,500. CC-1 paid for the Malibu in cash. An employee at the dealership informed CC-1 that the Malibu had an electrical problem, but CC-1 responded, in sum and substance and in part, that he only needed the vehicle for one day to drive to Brooklyn.

10. Based on my participation in the investigation, including my review of surveillance footage, I am aware that, later on June 25, 2022, at approximately 8:30 p.m., CC-1 purchased multiple large, dark-colored duffle-style bags in Brooklyn, New York.

11. I am further aware, based on my review of location data, that PATCHIAV and CC-1 were in the same vicinity during the overnight hours of June 25-26, 2022.

12. The following day, on or about June 26, 2022, the Malibu was picked up by a tow truck in Brooklyn, New York at the request of an unknown caller. The Malibu was towed to a residence in Ellenville, New York (the "Ellenville Residence").

13. Based on witness statements and location data, I am aware that, later on June 26, 2022, CC-1 and PATCHIAV went to the Ellenville Residence, where the Malibu was parked. Based on my participation in the investigation, including eyewitness interviews, I am aware that CC-1 used a hammer to break the rear passenger window in order to gain access to the Malibu. CC-1 then removed documents from the glove box and removed garbage from the trunk of the Malibu. I am further aware, based on eyewitness interviews, that CC-1 also removed tools from the trunk of the Malibu and used a garden hose to clean the tools and the exterior of the Malibu.

14. On or about June 27, 2022, two days after Victim-1's disappearance, CC-1 purchased a ticket for an international Turkish Airlines flight from New York City's John F.

Kennedy International Airport ("JFK Airport") to the Republic of Georgia, departing on June 28, 2022.

15. On or about June 28, 2022, prior to boarding the flight, CC-1 was interviewed by law enforcement officers at JFK Airport. In sum and substance and in part, CC-1 acknowledged that he knew Victim-1, and that Victim-1 owed him money for high-end watches that CC-1 and PATCHIAV had previously given Victim-1 to sell. CC-1 further stated that Victim-1 had given him $10,000 in cash and a $20,000 check from TD Bank, and had also signed over his Mercedes.

16. Additionally, law enforcement officers at JFK Airport conducted a border search of a cellular telephone in CC-1's possession (the "CC-1 Phone"). Among other things, the CC-1 Phone reflected telephone communications with Victim-1 via WhatsApp prior to Victim-1's June 25, 2022 disappearance.[2] The CC-1 Phone also contained a photograph of the notarized statement described above.

17. Law enforcement officers also observed on the CC-1 Phone communications between CC-1 and PATCHIAV via WhatsApp, including references to the money owed by Victim-1 and Victim-1's transfer of ownership of his Mercedes to CC-1. The CC-1 Phone also contained a video, which had been sent to PATCHIAV, of a large quantity of cash. Law enforcement officers seized the CC-1 Phone and approximately $26,500 in cash from CC-1, who subsequently departed on the Turkish Airlines flight.

18. Law enforcement subsequently conducted a search of the Malibu pursuant to a judicially authorized search warrant. Among other things, law enforcement recovered tools

---

[2] Based on my training and experience, including my experience investigating organized crime, I am aware that WhatsApp is an encrypted text messaging and call platform that allows users to, among other things, send end-to-end encrypted messages.

6

from the Malibu, including a lug wrench, pliers and a vehicle jack. Based on my review of FBI laboratory reports, I am aware that the presence of blood was indicated on several of the tools, and that DNA test results indicate, with a "very strong" level of support, that DNA recovered from the tools originated from Victim-1.

19. On or about February 21, 2023, the remains of a deceased person were discovered in Ellenville, New York behind the Ellenville Residence (where law enforcement recovered the Malibu). The remains were protruding from two large, dark-colored duffle-style bags, consistent in appearance with the bags purchased by CC-1 on June 25, 2022. Clothing recovered from the body is consistent with the clothing worn by Victim-1 on June 25, 2022—the day of Victim-1's disappearance.

WHEREFORE, your deponent respectfully requests that the defendant SHLOMO PATCHIAV, be dealt with according to law.

_____
JARRETT CONCANNON
Special Agent, Federal Bureau of Investigation

Sworn to before me this
22 day of February, 2023

_____
THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK